——— FILED      ——— ENTERED
——— LOGGED     ——— RECEIVED

Case #: _____     APR 2 6 2010

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

# In The United States District Court

BY

DEPUTY

# For the District of Maryland

# Greenbelt, Maryland.

Kess Tani – Plaintiff

P.O. Box 794,

North East, Maryland 21901

E-Mail: kess.tani@yahoo.com

### Plaintiff

Vs.

Consumer Rights Violations, Breach Of
Contract, Fraud, False Advertisement,
Negligence, Reckless Disregard For the
Truth.

Case #: WDQ 10 CV 1036

### Trial By Jury Demanded

**Defendants** – ATT Mobility, LLC; CEO; CFO; Presidents; and Board of Directors and other
Yet to be Identified Defendants.

Attn: Kathleen H. Broom – Paralegal
ATT Mobility, LLC
1025 Lenox Park Blvd, Suite SC23
Atlanta, GA 30319

Kess Tani                    Page 1 of 58

**Case #:** _____

# TABLE OF CONTENTS.

1. Introduction ……………………………………………………………………………… 3

2. Elements of This Law Suit ……………………………………………….…………………… 5

3. Background ……………………………………………………………………………… 9

4. Statement of Material Facts …………………………………………………………………… 11

5. Claims/Counts ………………………………………………………………………… 32

6. Exhibits 1 To 12 ……………………………………………………………………… 39

**Case #:** _____

# **INTRODUCTION**

**Plaintiff Kess Tani (Hereinafter Referred to as Plaintiff) Hereby Initiate a Consumer Rights and Tort Law Violations Complaint, for Declaratory, Injunctive, Compensatory Damages, Statutory Damages, Attorneys' Fees, Cost of Action, and Punitive Damages, Sought Against ATT Mobility, LLC; CEO; CFO; President; Board of Directors and other Yet to be Identified Defendants, In Their Official and Individual Capacities, in the Above Titled Case, and Assert the Following Claims/Violations Against the Instant Defendants:**

a) Violations of Provisions of 15 U.S.C. 1692e, For Willfully and Maliciously Filing a Known False and Perjured Credit Information About the Plaintiff With Debt Collector, EOS-CCA.

b) Violations of Provisions of 15 U.S.C. 1692e, For Willfully and Maliciously Filing a Known False and Perjured Credit Information About the Plaintiff With Credit Bureaus.

c) Violations of Provisions of 15 U.S.C. 1692g, For Failure to Provide the Plaintiff With Debt Validation, Pursuant to 15 U.S.C. 1692g.

d) Violations of Provisions of 15 U.S.C. 1692e, For Willfully and Maliciously, Falsely Misrepresenting the Character, Amount and Legal Status of the Purported Debt.

e) Violations of Provisions of 15 U.S.C. 1692e, For Failing to Communicate that the Purported Debt Was Known to be False, and Was in Dispute.

f) Violations of Provisions of 15 U.S.C. 1692f, For Predatorily and Fraudulent Collecting Monies for Defective Equipment, and For Services Not Provided, and for Services **that are Not Expressly Authorized on the Instant Contract, or Permitted By Law.**

g) Violations of Provisions of 15 U.S.C. 1692d, For Criminally Harming Plaintiff's Reputation.

**Case #:** _____

**h)** Unlawful, Unilateral and Arbitrary Breach of Contract.

**i)** Internet Fraud, Mail Fraud, Wire Fraud.

**j)** False Advertisement.

**k)** Negligent and Reckless Disregard for the Truth, Life and Credit Standing of Plaintiff.

**l)** Violation of U.C.C., Article 2 *(Statutes of Frauds)*.

**m)** Violation of 18 U.S.C. 1341. *(Internet, Mail and Wire Fraud)*.

**n)** Violation of 18 U.S.C. 1343 *(Internet, Mail and Wire Fraud)*.

**o)** Violation of 15 U.S.C.A. § 1125(a) *(False Advertising)*.

**p)** Violation of Maryland Uniform Commercial Code.

**q)** Violation of Maryland Consumer Protection Act.

**r)** Violation of MD Code, Commercial Law, Title 13.

**s)** Violation of Fed. R. Civ. P. 18(a).

**t)** Violation of Federal Reserve Board Regulation Z, 12 CFR § 226.

**Case #:** _____

# ELEMENTS & BACKGROUND OF LAWSUIT.

## ELEMENTS OF THIS LAWSUIT.

**Statutes of Limitation.**

1. The U.S. and Maryland "Statutes of Limitation" for Breach of Contract Under U.C.C. is 4 Years.

2. The U.S. and Maryland "Statutes of Limitation" for Fraud is Three (3) Years.

3. The U.S. and Maryland "Statutes of Limitation" for False Advertising/Product Liability is Three (3) Years.

4. The U.S. and Maryland "Statutes of Limitation" for Negligence is Three (3) Years.

5. Injuries/Harm Sustained By the Plaintiff Occurred Between Feb. 28th, 2008 and July 28th, 2009.

6. This Instant Law Suit was Filed On or About April 9th, 2010.  This Case Is  Timely Filed and Well Within the "Statutes of Limitation" Delineated Above. This Law Suit is Not Time Barred.

Kess Tani

**Case #:** _____

## Jurisdiction, Diversity, Maryland Long Arm Law, Venue, Maryland MTCA And LGTC Law.

### Jurisdiction.

7. Jurisdiction, Declaratory and Injunctive Relief is Proper Under this Court, and Invoked Pursuant to 15 USC § 1601 *et seq* (Fair Debt Collection Practices Act); 18 U.S.C. 1341 (Wire/Internet and Mail Fraud); 18 U.S.C. 1343 (Wire/Internet and Mail Fraud); 15 U.S.C.A. § 1125(a) (False Advertising); U.C.C. Article 2 (Statutes of Frauds); Maryland Uniform Commercial Code; Maryland Consumer Protection Act; MD Code, Commercial Law, Title 13; 28 USC §§ 1331, 1337; Fed. R. Civ. P. 18(a); and Federal Reserve Board Regulation Z, 12 CFR § 226.

### Diversity.

8. Plaintiff is a Natural Person, and a Citizen of the United States, Domiciled in the Great State of Maryland.

9. Defendants, ATT Mobility, LLC; CEO; CFO; President; and Board of Directors, and other Yet to be Identified Defendants, are Owners and Providers of Voice and Internet Services in the Great State of Maryland.

10. This Court Has Pendant and Supplemental Jurisdiction Over State Claims Alleged in this Complaint.

11. The Claims Alleged from these Events Occurred in Maryland. The Plaintiff and Defendants are all Located in Maryland. Diversity Issues are Indeterminate at this Stage of Litigation. Plaintiff Hereby Reserves His Rights to Amend His Complaint if it is Determined that Defendants have Out of State Entities.

12. The Claims/Issues Raised in this Complaint Exceeds the Value of $75,000.00.

Kess Tani                          Page 6 of 58

**Case #:** _____

## Maryland Long Arm Law.

13. Maryland Long Arm Statutes is Proper and Applicable, Because:

   a. All Defendants Transact Business and Perform Work in the State of Maryland.

   b. All Defendants Caused Tortuous Injuries/Harm to the Plaintiff in Maryland.

   c. All Defendants Did Cause a Tortuous Injuries/Harm in the State of Maryland.

   d. All Defendants Have an Interest, Use and Possess Real Estate in the State of Maryland.

   e. All Defendants have Insurance/Surety Covering Persons, Property, Risk, Contracts, Obligations, and Agreements within the State of Maryland.

## Venue.

13. Venue is Proper and Applicable, Because:

   ❑ A Substantial Part of the Defendants' Unlawful Tortuous Acts and Injuries/Harm Sustained by the Plaintiff, Occurred in the State of Maryland.

   ❑ Defendants Reside and Conducts Business in the State of Maryland.

   ❑ Defendants are Subject to Personal Jurisdiction in the State of Maryland.

## Maryland MTCA & LGTC Law.

14. Maryland MTCA & LGTA is Not Appilicable in this Case. It Should Be Noted that Federal and Maryland Statutes and Laws Invoked in this Lawsuit/Cause of Action Does Not Require that a Plaintiff Seek State and/or Local Remedies as a Prerequisite or Bar, Prior to Filing Multiple Violations Invoked in Plaintiff's Complaint, and Neither Does it Bar a Parallel Cause of Action in Both State and Federal Courts.

**Case #:** _____

**Parties.**

**Plaintiff**:    Kess Tani, a Natural Person, and a Citizen of the United States of America
Domiciled in the Great State of Maryland.

**Defendants:**    ATT Mobility, LLC – Voice & Internet Service Owner & Provider.

CEO – Chief Executive Officer For ATT Mobility, LLC.

CFO – Chief Financial Officer For ATT Mobility, LLC.

President (NE) – President For ATT Mobility, LLC.

Board of Directors – Board of Directors For ATT Mobility, LLC.

Yet To Be Identified Defendants – For ATT Mobility, LLC.

**Defendant(s)**

**Case #:** _____

## BACKGROUND.

15. Plaintiff is a Natural Person, a Nuclear/Electrical Engineer Who has Worked for Over Thirty (30) Years in the Construction, Operation and Inspection of Nuclear Power Plants Across the United States, and had Independent Contracts with the U.S. Department of Homeland Security (DHS) for Refurbishment of Military Communications and Radar Systems for Dept of Homeland Security (DHS) and other Clients.

16. Defendants, ATT Mobility, LLC; CEO, CFO, President, Board of Directors, and Yet To Be Identified Defendants are Owners and Providers of Voice and Internet Services, and Subject to FTC, FCC and Maryland Statutes, Laws and Regulations.

17. Plaintiff and ATT Mobility Entered into a Contract in Which Both Parties Agreed that ATT Mobility Shall Provide New Voice and Wireless Data Services and Equipment for Two (2) Years, and that the Plaintiff Shall Pay $99.99 Plus Taxes Per Month for the Two (2) Years of the Contract.

18. ATT Mobility Failed to Perform the Terms of the Contract by Consistently Furnishing the Plaintiff with Known Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services; and Fraudulently Collecting Monies for Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services; and for Services Not Provided, and Fraudulently Adjusting/Manipulating the Plaintiff's Account. In So Doing, ATT Mobility Breached the Contract.

19. Furthermore, ATT Mobility Breached the Instant Contract By Unlawfully, Unilaterarily and Arbitrarily Terminating the Contract and Agreeing to Waive the Early Termination Fee (ETF), Which ATT Mobility Also Failed to Perform Per the Contract.

20. ATT Mobility Willfully, Maliciously Then Proffered Known False Credit Information about the Plaintiff to Debt Collector(s) and the Credit Bureaus.

**Case #:** _____

21. Plaintiff Filed a Debt Validation Request With ATT Mobility and Its Debt Collector(s).

22. ATT Mobility Failed/Refused to Respond to Plaintiff's Debt Validation Request.

23. Plaintiff Moved to File a "Notice of Violations and Intent To Sue" With ATT Mobility.

24. On or About March 11th, 2010, ATT Mobility Sent an Unacceptable Settlement Offer of $85.28.

**PS:**

25. Plaintiff Humbly Draws the Court's Attention to the Fact that the Settlement Amount is Not Even Realist for Repairing the Damage Done by ATT Mobility to the Plaintiff's Credit Record/History.

26. ATT Mobility's Unlawful Actions Delineated Above and ATT Mobility's Unacceptable Settlement Offer is Now the Gravamen of this Litigation.

Kess Tani

Case #: _____

## STATEMENT OF MATERIAL FACTS.

27. On or About February 27th, 2008 Plaintiff got an Advertising by Mail From ATT Mobility and Signed Up for ATT Mobility's [1]Sierra Wireless AC881 Air Card Phone/Modem Advertisement Plan for Laptops.  Plaintiff Paid $149.99 + $60.00 for a Total of $200.00, for Voice and Wireless Air Card Data Service, With Contract Agreement of a $100.00 Rebate. The Table Below Delineates The Type Plan, and the Total Per Month.

| Item #: | Description | Rate Plan | Per Month Service Rate/Cost/Fees |
|---------|-------------|-----------|----------------------------------|
|         |             |           |                                  |
| 1       | Voice Ph.#: 410-693-4487 | NTN450RUMM5KNW Unlimited Exp M2M Minutes, With Roll Over Minutes | $39.99 |
| 2       | Wireless Data. Ph.#: 410-693-6268 | NTN450RUMM5KNW 5 GB of Transferred Data. | $60.00 |
| Total   |             |           | $99.99 + Fed Charges + Taxes |

28. The Components for the Instant Advertised Service Arrived On or About March 3rd, 2008. Plaintiff Checked to See ATT Mobility's Written Technical Specifications and System Requirements for the [1]Sierra Wireless AC881 Air Card Phone/Modem to Determine Compatibility With the Written Technical Specifications and System Requirements of Plaintiff's Toshiba Laptop. The Technical Specifications and System Requirements Seemed to Match. ***Please See Exhibit 1, as Material Evidence in Support of this Allegation/Material Fact.***

[1]Air Card is an Electronic Devices Used to Access the Internet From "Anywhere in the World" Wirelessly, As Advertised By ATT Mobility.

Kess Tani                              Page 11 of 58

Case #: _____

29. After the Reading and Reviewing the Installation Instructions, Plaintiff Installed the Accompanying Software and [1]Sierra Wireless AC881 Air Card Phone/Modem /Hardware in to His Toshiba Laptop. Upon Boot Up, Plaintiff's Computer Locked Up (Won't Respond to Any Keyboard or Morse Inputs).

30. Plaintiff was Stumped. So Plaintiff Tried the same Procedure With Plaintiff's Acer Laptop, and It Locked Up Also. By the Troubleshooting Process of Deductions/Elimination, Plaintiff came to the Conclusion that ATT Mobility [1]Sierra Wireless AC881 Air Card Phone/Modem was the Culprit.

31. On or About March 3rd, 2008, Plaintiff Verbally Made a Complaint to ATT Mobility.

32. On or About March 5th, 2008, ATT Mobility Recommended a Fix, and Sent Plaintiff a [2]SIM Card (Subscriber Identity Module) for the [1]Sierra Wireless AC881 Air Card Phone/Modem.

33. Upon Installation of the SIM Card into the [1]Sierra Wireless AC881 Air Card Phone/Modem, The Air Card That Was Advertised and Billed as a Device that Can "Access the Internet From Anywhere in the World" Failed Again. Plaintiff then Notified ATT Mobility of the Equipment Failures Again.

34. On or About March 20th, 2008, ATT Mobility Issued a Return Label/Authorization, and Plaintiff Returned the [1]Sierra Wireless AC881 Air Card Phone/Modem to ATT Mobility, After Discovering that the [1]Sierra Wireless AC881 Air Card Phone/Modem Was Not New (It was a Repaired/Refurbished Unit, Falsely Advertised as a New Air Card) and The SIM Card Was Not the Latest Revision As Advertised by ATT Mobility. ***Please See Exhibit 2 as Material Evidence in Support of this Allegation/Material Fact.***

---

[2]A SIM Card is an Electronic Device Containing the Software/Firmware, that When Inserted into the Air Card, Instructs the Air Card What to Do and What Codes to Respond To or Disregard. If the SIM Card Contains Faulty Firmware/Software, then It Becomes  "Garbage In Garbage Out" From the Get Go.

---

Case #: _____

35. On or About April 3rd, 2008 ATT Mobility Finally Acknowledged Receipt of the [1]Sierra Wireless AC881 Air Card Phone/Modem. ***Please See Exhibit 3 as Material Evidence in Support of this Allegation/Material Fact.***

36. On or About April 10th, 2008, Plaintiff Again Received a Second Round of Another [1]Sierra Wireless AC881 Air Card Phone/Modem, Which Also Failed Miserably. Plaintiff Notified ATT Mobility of the Failures.

37. On or About April 15th, 2008, Due to the Consistent Failures/In-Operability of the [1]Sierra Wireless AC881 Air Card Phone/Modem, and SIM Cards, Plaintiff Again Returned the Instant Items, With ATT Mobility's Return Label/Authorization Dated April 15th, 2008. ***Please See Exhibit 4 as Material Evidence in Support of this Allegation/Material Fact.***

38. On or About August 28th, 2008 the [1]Sierra Wireless AC881 Air Card Phone/Modem Was Replaced With an Option Wireless Hsupa Express Phone Card, By ATT Mobility and ATT Mobility Fraudulently OverBilled Plaintiff $99.99, While and When Monies from the Previously Defective Returned Air Cards Had Not Been Refunded/Credited to the Plaintiff's Account. ***Please See Exhibit 5 as Material Evidence in Support of this Allegation/Material Fact.***

39. Plaintiff Again Installed the Accompanying Software and Option Wireless Hsupa Express Phone Card in to His Toshiba Laptop.  Upon Boot Up, Plaintiff's Computer Locked Up Again.

40. Once Again Plaintiff Tried the Same Procedure With His Acer Laptop, and It Locked Up Also. By the Troubleshooting Process of Deductions/Elimination, Plaintiff Came to the Conclusion that ATT Mobility Option Wireless Hsupa Express Phone Card Was the Culprit.

41. On or About September 3rd, 2008, Plaintiff Again Contacted ATT Mobility, and ATT Mobility Recommended a Fix and Sent Plaintiff a [2]SIM Card (Subscriber Identity Module) for the Option Wireless Hsupa Express Phone Card.

**Case #:** _____

42. Upon Installation of the SIM Card into the Option Wireless Hsupa Express Phone Card, The Air Card That Was Advertised and Billed as a Device that Can "Access the Internet From Anywhere in the World" Failed Again.

43. On or About October 6th, 2008, the Option Wireless Hsupa Express Phone Card was Still Not Working/Functioning.

44. Plaintiff Contacted ATT Mobility Again About the Failure of ATT Mobility's Equipment.

45. Finally, On or About November 24th, 2008, ATT Mobility Instructed the Plaintiff to Return the Option Wireless Hsupa Express Phone Air Card With Return Label/Authorization (RMA44062400). Plaintiff Retuned Items Within 10 Days of the RMA. ***Please See Exhibit 6 as Material Evidence in Support of this Allegation/Material Fact.***

46. On or About November 25th, 2008, ATT Mobility Warrantee Department Replaced the Option Wireless Hsupa Express Phone Card with Yet Another Repaired/Refurbished Unit. ***Please See Exhibit 7 as Material Evidence in Support of this Allegation/Material Fact.***

47. Plaintiff Contacted ATT Mobility Again About the Failure of the Replacement Air Card.

48. On or About December 19th, 2008, ATT Mobility, Again Recommended a Fix and Sent Plaintiff a [2]SIM Card (Subscriber Identity Module) for the Option Wireless Hsupa Express Phone Card. ***Please See Exhibit 8 as Material Evidence in Support of this Allegation/Material Fact.***

49. Upon Installation of the SIM Card into the Option Wireless Hsupa Express Phone Card, The Air Card That Was Advertised and Billed as a Device that Can "Access the Internet From Anywhere in the World" Failed Again.

50. On or About January 6th, ATT Mobility Once Again Furnished Plaintiff with a Repaired/Refurbished Option Wireless Hsupa Express Phone Air Card. ***Please See Exhibit 9 as Material Evidence in Support of this Allegation/Material Fact.***

Kess Tani                    Page 14 of 58

Case #: _____

51. On or About January 6th, 2009 Plaintiff Declined the Repaired/Refurbished Option GT Ultra Wireless Air Card, and Insisted on a New Air Card in Accordance with the Contract Plaintiff Entered into With ATT Mobility.

52. On or About February 13th, 2009 ATT Mobility Unilaterally Terminated the Contract, and Agreed to Waive the ETF (Early Termination Fee) and Sent Plaintiff a Predatory and Fraudulent Bill of 115 Minutes For Voice and Text Messaging Usage of 41 Messages, While the Records Shows an Outstanding Roll Over Minutes in Excess of 1071 in December 2008, and 285 Roll Over Minutes for February 2009; and the Fact that Plaintiff did not Text Message During the Time Period He Had Signed Up for the Voice and Internet Service. ***Please See http://www.eweek.com/c/a/Mobile-and-Wireless/ATandT-Offers-18-Million-to-Settle-Early-Termination-Fee-Complaints-103559/, Where ATT Mobility Agreed to Settling ETF Litigation Such as in this Instant Case.***

53. ATT Mobility Clearly Did Not Waive the EFT Fees, and Did Not Honor the Rebate as Advertised and Agreed to in ETF Settlement Case Cited Above. In So Doing Violated the Above Agreed to Court Settlement.

**PS:**

54. Plaintiff Humbly Draws this Honorable Court's Attention to Plaintiff's Exhibits 1 Through 9 and the Table Below Which Delineates the Number of Times ATT Mobility Willfully and Knowingly Furnished the Plaintiff with Known Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services, From February 27th, 2008 Through February 13th, 2009.

55. Furthermore, Please Note the Fact that During this Time Period ATT Mobility was Predatorily and Fraudulently OverBilling, Fraudulently Adjusting/Manipulating Plaintiff Account and Collecting Monies for Defective Products and for Services Not Provided.

Kess Tani                              Page 15 of 58

Case #: _____

| Date | ATT Mobility Actions | Exhibit #: | Remarks |
|------|----------------------|------------|---------|
| | | | |
| 03/03/2008 | Original Order For Voice & Data | 1 | Order For Sierra AC 881. |
| 03-05-2008 | ATT Mobility's Recommend Fix- Sent SIM Card | N/A | Sent SIM Card Failed/Defective. |
| 03-20-2008 | Return Authorization For Sierra AC881 | 2 | Return of Failed/Defective Equipment. |
| 03-25-2008 | ATT Mobility's Acknowledgment of Receipt of Failed/Defective Equipment | 3 | Acknowledgement. |
| 04-10-2008 | Replacement Sierra AC881 | N/A | ATT Mobility Sent Replacement Air Card |
| 04-15-2008 | Return Authorization For Sierra AC881 | 4 | Return of Failed/Defective Equipment. |
| 08-24-2008 | Replacement of Sierra AC881 With Option Express Wireless Hsupa Air Card | 5 | ATT Mobility Sent Replacement Air Card |
| 09-03-2008 | ATT Mobility's Recommend Fix- Sent SIM Card | N/A | Sent SIM Card Failed/Defective. |
| 10-06-2008 | Plaintiff Again Reports Failure of Equipment | N/A | Option Express Air Card Still Not Working |
| 11-24-2008 | Return Authorization For Option Express Air Card | 6 | Return of Failed/Defective Equipment. |
| 11-25-2008 | ATT Mobility Warrantee Dept. Replaced Defective Air Card With Another Option Express Air Card | 7 | ATT Mobility Sent Replacement Air Card |
| 12-19-2008 | ATT Mobility's Recommend Fix- Sent SIM Card | 8 | Sent SIM Card Failed/Defective. |
| 01-06-2009 | ATT Mobility Warrantee Dept. Replaced Defective Air Card With Option GT Air Card | 9 | ATT Mobility Sent Replacement Air Card |
| 01-08-2009 | Plaintiff Declines Replacement. | N/A | Plaintiff Demands Compliance With Contract |
| 02-13-2009 | ATT Unilaterally Terminated Contract | N/A | Failed/Refused to Waived ETF |

Kess Tani                           Page 16 of 58

Case #: _____

56. ATT Mobility's Furnishing the Plaintiff with Known Defective, Decrepit, In-Operable, Poorly
    Refurbished Hardware, Firmware/Software, and Wireless Data Services, From February 27th,
    2008 Through February 13th, 2009, and ATT Mobility Predatorily and Fraudulently OverBilling,
    Fraudulently Adjusting/Manipulating Plaintiff Account and Collecting Monies for Defective
    Products and for Services Not Provided, **Is and Was Not Expressly Authorized on the Instant
    Contract, or Permitted By Law.**

57. On or About June 14th, 2009, ATT Mobility Unlawfully, Willfully, Maliciously and Falsely
    Proffered a Known False, Malicious and Fraudulent Credit Report About Plaintiff to the Three
    Credit Bureaus Without Providing Plaintiff With Validation of Debt.

58. On or About June 14th, 2009, ATT Mobility Unlawfully, Willfully, Maliciously and Falsely
    Proffered a Known False, Malicious and Fraudulent Credit Report About Plaintiff to ATT
    Mobility's Debt Collector Named "EOS-CCA".

59. On or About June 20th, 2009, Plaintiff Filed a Request For Debt Validation With ATT Mobility
    and Its Debt Collector Named "EOS-CCA".

60. On or About July 20th, 2009, ATT Mobility and ATT Mobility's Debt Collector Debt Collector
    Named "EOS-CCA" Failed/Refused to Provide Plaintiff With Debt Validation on the
    Disputed/Purported Debt.

61. On or About January 2nd, 2010 ATT Mobility Debt Collector "EOS-CCA)" Refused to Collect
    the Fraudulent and Predatory Debt, and Returned Collection to ATT Mobility. ***Please See Exhibit
    10 as Material Evidence in Support of this Allegation/Material Fact.***

62. On or About February 12th, 2010, Plaintiff Filed a Notice of Violations and Intent To Sue, With
    ATT Mobility.

63. On or About March 11th, 2010, ATT Mobility Offered an Unacceptable Settlement Offer of
    $85.28.

Kess Tani                       Page 17 of 58

**Case #:** _____

64. Plaintiff Declined the Settlement Offer. ATT Mobility's Settlement Offer Left the Plaintiff With No Choice But to Seek Legal Redress/Recourse in State and/or Federal Courts.


## PROOF OF ATT MOBILITY'S DEFRAUDING, OVERBILLING & FRAUDULENTLY ADJUSTING/MANUPULATING PLAINTIFF'S ACCOUNT.

65. As of February 27th, 2008, the Balance on the Instant Contract's Account was $0.00

66. On or About February 27th, 2008, Plaintiff Paid $149.99 + $60.00 for a Total of $200.00 for Voice and Wireless Data Services, With Contract Agreement for a $100.00 Rebate.

67. ATT Mobility Defrauded Plaintiff of His $100.00 Rebate.

68. ATT Mobility Defrauded Plaintiff of Early Termination Fees (ETF).

69. ATT Mobility Fraudulently OverBilled for Option Express Air Card for $99.99, While and When Monies from the Previously Defective Returned Air Cards Had Not Been Refunded/Credited to the Plaintiff's Account. *Please See Exhibit 5 as Material Evidence in Support of this Allegation/Material Fact.*

70. During the Billing Cycle of 02/27/08 To 03/28/08, While ATT Mobility Willfully, Knowingly Furnished Plaintiff with Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services, ATT Mobility was Predatorily and Fraudulently Billing and OverBilling for the Returned Defective Equipment, and For Services Not Provided, in the Amount of $377.07. *Please See Exhibit 11 and 12 as Material Evidence in Support of this Allegation/Material Fact.*

**Case #:** _____

## ATT MOBILITY UNLAWFULLY BREACHED THE CONTRACT.

71. ATT Mobility's Contract That Plaintiff Agreed/Signed Up For, was as Follows:

| Item #: | Description | Rate Plan | Per Month Service Rate/Cost/Fees |
|---|---|---|---|
| | | | |
| 1 | Voice Ph.#: 410-693-4487 | NTN450RUMM5KNW Unlimited Exp M2M Minutes, With Roll Over Minutes | $39.99 |
| 2 | Wireless Data. Ph.#: 410-693-6268 | NTN450RUMM5KNW 5 GB of Transferred Data. | $60.00 |
| Total | | | $99.99 + Fed Charges + Taxes |

72. Plaintiff's Obligation to the Contract Was To Pay $99.99 Plus Taxes Per Month.

73. ATT Mobility's Obligations was to:
    a. Provide Quality Voice Phone Services.
    b. Provide Quality Wireless Data Services.
    c. Provide Quality New, Non-Defective Hardware, and Firmware/Software.

74. Plaintiff Kept His Obligation to the Contract By Paying Ahead, and Above and Beyond the Minimum Payment of $99.99 Plus Taxes.

75. On or About February 13th, 2009 ATT Mobility Unilaterally Terminated the Contract, and Agreed to Waive the ETF (Early Termination Fee).

76. ATT Mobility Failed to Waive the ETF as Agreed.

Kess Tani                          Page 19 of 58

Case #: _____

77. ATT Mobility Has No-Non Discriminatory, Lawful, Engineering, Manufacturing, Quality
    Control/Assurance or Technical Justifications, for Consistently Furnishing the Plaintiff With
    Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and
    Wireless Data Services, From February 27th, 2008 Through March 14th, 2009, While at the Same
    Time Knowingly, Willfully, Predatorily, Fraudulently and Maliciously OverBilling the Plaintiff,
    and Fraudulently Adjusting/Manipulating Plaintiff's Account, for Services and Equipment  Not
    Provided.  **Please See** http://www.attripoff.com; http://tribeswell.com/att-rollover-minutes-are-a-
    rip-off.

78. ATT Mobility Unlawfully Collected Monies For Defective Equipment and Services Not
    Provided, and for Services and Products **that are Not Expressly Authorized on the Instant
    Contract, or Permitted By Law.**

79. ATT Mobility Demonstratively and Consistently Failed to Meet the Terms and Obligations of the
    Instant Contract.

80. Plaintiff Had Reasons to Believe That ATT Mobility Products Were New and Functional as
    Advertised, and the Voice and Wireless Data Services Advertised Were of the Best Quality.

81. Plaintiff Did Not Sign on to or Agree to a Contract Authorizing ATT Mobility to Provide Him
    With a Litany of Defective, Decrepit, In-Operable, Poorly Refurbished Hardware,
    Firmware/Software, and Wireless Data Services.

82. Plaintiff Did Not Sign on to or Agree to Contract Authorizing ATT Mobility to Predatorily,
    Maliciously and Fraudulent OverBill Him and Fraudulently Adjust/Manipulate His Account.

83. Plaintiff Did Not Sign on to or Agree to a Contract Authorizing ATT Mobility to Fail to Provide
    Him With the Contracted Rebate of $100.00.

84. Plaintiff Did Not Sign on to or Agree to Contract Authorizing ATT Mobility To Unilaterally,
    Malicious and Arbitrarily Terminate the Instant Contract, While Plaintiff Was Not in at Fault.

Kess Tani                    Page 20 of 58

**Case #:** _____

85.  ATT Mobility Had No Legal Valid Defense to Breach the Instant Contract.  Wherefore, ATT Mobility, CEO, CFO, President and Board of Directors are Liable To the Plaintiff By Law.

86.  ATT Mobility's Unlawful Actions Directly/Proximately Caused Injuries/Harm to the Plaintiff.


## ATT MOBILITY'S DEFRAUDED (INTERNET, MAIL & WIRE FRAUD) THE PLAINTIFF.

87.  ATT Mobility Made Representations that the Air Cards and SIM Cards Furnished to the Plaintiff were New and Functional, Capable of "Accessing the Internet From Anywhere in World", High Quality Products, and Reliable Wireless Data Services.

88.  ATT Mobility Made the Representations with the Intent that the Plaintiff and a Substantial Portion of Its Targeted Audience Would Rely on it, and Buy ATT Mobility Products and Services. **Please See** http://www.attripoff.com; http://www.ucan.org/forum/forums/telecommunications/wireless_phone/att_mobility_aka_cingular_billing_dispute.

89.  Plaintiff Relied on ATT Mobility's Representations.

90.  ATT Mobility, Consistently Provided the Plaintiff With Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services

91.  ATT Mobility Representations of its Products' Character, Functionality, Capabilities, Quality and Reliability Were and Are False.

92.  ATT Mobility Knew or Should Have Known that Its Representations of its Products' Character, Functionality, Capabilities, Quality and Reliability Were and Are False.

Kess Tani                          Page 21 of 58

**Case #:** _____

93. ATT Mobility Fraudulently and Unlawful Collected Monies For Defective Equipment and Services Not Provided, and for Services and Products that are ***Not Expressly Authorized on the Instant Contract, or Permitted By Law.***

94. ATT Mobility Fraudulently Failed to Provide the Plaintiff With $100.00 Rebate Agreed to in the Instant Contract.

95. ATT Mobility Fraudulently Failed to Waive the Early Termination Fees (ETF) that ATT Mobility Agreed to Waive, When ATT Mobility Unilaterally, Unlawfully and Arbitrarily Terminated the Instant Contract.

96. ATT Mobility's Unlawful Actions Directly/Proximately Caused Injuries/Harm to the Plaintiff.


## ATT MOBILITY'S FALSE ADVERTISEMENTS.

97. ATT Mobility Failed to Disclose in Its False Advertisement that ATT Mobility's Equipment to be Furnished for the Voice and Wireless Data Services to the Plaintiff and a Substantial Portion of Its Targeted Audience were Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services.

98. The Falsely Advertised ATT Mobility's Products and Services Involves Goods and Services in Interstate Commerce.

99. The Instant ATT Mobility's False Advertisement Deceived the Plaintiff and a Substantial Portion of Its Targeted Audience to Procure Defective, Decrepit, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services. **Please See** http://forums.wireless.att.com/t5/LaptopConnect-Tethering/Air-Card-Rip-Off/m-p/1485155?view=by_date_ascending.

Case #: _____

100.     ATT Mobility's Unlawful Actions Directly/Proximately Caused Injuries/Harm to the
         Plaintiff.


## ATT MOBILITY'S NEGLIGENCE & RECKLESS DISREGARD
## FOR THE TRUTH, LIFE & PLAINTIFF'S CREDIT STANDING.

101.     As a Product Manufacturer, ATT Mobility Owes a Duty to the Plaintiff and a Substantial
         Portion of Its Targeted Audience, Because ATT Mobility Willfully, Knowingly,
         Predatorily and Fraudulently Provided Known Defective, Decrepit, In-Operable, Poorly
         Refurbished Hardware, Firmware/Software, and Wireless Data Services.

102.     ATT Mobility Breached This Instant Duty By Willfully, Maliciously, Fraudulently and
         Malevolently Overbilling for Known Defective Equipment and Services Not Provided;
         Making Fraudulent Adjustment/Manipulating Plaintiff's Account.

103.     ATT Mobility Knew or Should Have Known that ATT Mobility Breached the Duty
         Owed to the Plaintiff, and Any Reasonable Person Would Recognize this Breach of Duty.

104.     Damages to the Plaintiff was Caused by ATT Mobility's Breach of the Contract/Duty.

105.     Plaintiff Humbly Submits and Argues that ATT Mobility's Unlawful Actions,
         Unbridled/Untamed and Malevolent Greed, that is Devoid of Any Moral Compass,
         and Recognizes No Boundaries is Extreme, Outrageous and Dangerous.

106.     ATT Mobility's Unlawful Actions Directly/Proximately Caused Injuries/Harm to the
         Plaintiff.

**Case #:** _____

## ATT MOBILITY UNLAWFULLY, WILLFULLY, KNOWINGLY PROFFERED KNOWN FALSE & MISLEADINGLY CREDIT INFORMATION TO DEBT COLLECTOR(S).

107.     On or About June 14th, 2009, ATT Mobility Willfully, Knowingly, Maliciously, Falsely and Misleadingly Proffered False and Misleading Credit Report About the Plaintiff to ATT Mobility's Debt Collector Named "EOS-CCA".

## ATT MOBILITY UNLAWFULLY, WILLFULLY, KNOWINGLY PROFFERED KNOWN FALSE & MISLEADINGLY CREDIT INFORMATION TO CREDIT BUREAUS.

108.     On or About June 14th, 2009, ATT Mobility Willfully, Knowingly, Maliciously, Falsely and Misleadingly Proffered False and Misleading Credit Report About the Plaintiff to Credit Bureaus.

## ATT MOBILITY UNLAWFULLY FAILED TO PROVIDE PLAINTIFF WITH DEBT VALIDATION.

109.     On or About July 20th, 2009, ATT Mobility and ATT Mobility's Debt Collector EOS-CCA Failed to Provide Plaintiff With Debt Validation on the Disputed/Purported Debt.

Kess Tani                          Page 24 of 58

Case #: _____

## ATT MOBILITY UNLAWFULLY, WILLFULLY, KNOWINGLY, AND FALSELY MISREPRESENTED THE CHARACTER, AMOUNT AND LEGAL STATUS OF PURPORTED DEBT.

110.     On or About June 14th, 2009, ATT Mobility Falsely Misrepresented the Character, Amount and the Legal Status of the Purported Debt.

## ATT MOBILITY UNLAWFULLY FAILED TO PROVIDE THE PLAINTIFF WITH INITIAL COMMUNICATION.

111.     On or About June 14th, 2009, ATT Mobility Failed to Provide Initial Communication to the Plaintiff, Stating that the Purported Debt was Known to be False, Fraudulent and in Dispute, and that it was being Turned Over to Debt Collectors and Reported to the Credit Bureaus.

## ATT MOBILITY UNLAWFULLY, PREDATORILY AND FRAUDULENTLY COLLECTED MONIES FOR DEFECTIVE PRODUCTS AND FOR SERVICES NOT PROVIDED.

112.     Between February 27th, 2008 and July 24th, 2009, ATT Mobility Unlawfully, Predatorily and Fraudulently Collected Monies from the Plaintiff for Defective, Decrepant, In-Operable, Poorly Refurbished Hardware, Firmware/Software, and Wireless Data Services; OverBilled, and Fraudulently Adjusted/Manipulated Plaintiff Account, and for Services Not Provided.

Kess Tani                          Page 25 of 58

**Case #:** _____

## ATT MOBILITY CRIMINAL HARMED PLAINTIFF'S REPUTATION.

113.     On or About June 24th, 2009, ATT Mobility Criminally Harmed the Plaintiff By
Willfully Proffering Known False, Perjured, Malicious Credit Reports to Debt Collectors
and Credit Bureaus. And the Credit Bureaus in Turn Provided the Instant Credit Reports
to Corporations, Companies, Investigative Entities, and Private Individuals, Etc.